CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

2016 SEP - 1  PM 4: 25

DEPUTY CLERK _____

| | | |
|---|---|---|
| EIMAN KHAMISSI, Pro Se, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:15-CV-129 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner, | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff EIMAN KHAMISSI, proceeding *pro se*, brings this cause of action pursuant to 42

U.S.C. §§ 1383(c) and 405(g) seeking review of a final decision of defendant CAROLYN W.

COLVIN, Acting Commissioner of Social Security Administration (Commissioner). Plaintiff was

determined not disabled and her claim for benefits was denied at the administrative level. For the

reasons set out herein, the undersigned United States Magistrate Judge recommends the

Commissioner's decision denying plaintiff's application for supplemental security income under

section 1614(a)(3)(A) of the Social Security Act be AFFIRMED.

I.
BACKGROUND

Plaintiff applied for supplemental security income in May of 2012, alleging she had been

disabled since January 1, 2011, due to hand and wrist pain, chronic back pain, leg pain, and carpal

tunnel syndrome (Tr. 76-80, 92-99). After plaintiff's application for benefits was denied by the

Commissioner on July 16, 2012, she requested a hearing before an administrative law judge (ALJ),

which was conducted May 9, 2014, by Administrative Law Judge Lantz McClain. (Tr. 13-20). ALJ McClain denied benefits on September 17, 2014. Plaintiff appealed the denial to the Appeals Council and submitted additional medical evidence. The Appeals Council reviewed the additional evidence and ALJ McClain's decision, but denied benefits on February 24, 2015.

At the ALJ hearing in May of 2014, plaintiff had an interpreter in Farsi. Testimony was received from plaintiff and from Ms. Cheryl A. Mallon, a Vocational Expert. Plaintiff appeared at the hearing without an attorney or other representative. The record was kept open after the hearing to provide plaintiff time to supplement the medical records which had been received by the ALJ. The ALJ's decision issued after all additional medical evidence was received from the plaintiff.

At the ALJ hearing, plaintiff testified she was not working at the time and had not worked since she came to the United States. (Tr. 845). She is married with three children, and her husband does not work because he is disabled with vision and heart problems. (Tr. 845). Plaintiff testified she feels she cannot work because she has back pain from a disc problem and also leg and hand pain. (Tr. 846). Plaintiff underwent back surgery to deal with the disc problem. (Tr. 846). Plaintiff testified she needed surgery on her hand because of numbness and pain and also on her left foot because of pain. (Tr. 846-47). Plaintiff testified she can only stand for ten minutes and walk for thirty minutes before back pain begins. (Tr. 847). On page three of plaintiff's Form SSA-3373-BK (the "Function Report"), she indicated she cannot stand for longer than ten minutes at a time. (Tr. 94). On page six of the Function Report, plaintiff indicated she can only walk for five minutes at a time with fifteen to twenty minutes of rest between bouts of walking. (Tr. 97). This description of plaintiff's walking limitations however is contradicted by plaintiff's own testimony stating she can walk for thirty minutes before back pain begins. (Tr. 847). Plaintiff stated she can only carry five pounds and cannot

bend to lift objects. (Tr. 847). Plaintiff stated she needs some help with daily grooming and taking care of herself. (Tr. 847). Plaintiff testified she does drive in emergencies and can do household chores with some assistance. (Tr. 848). She typically watches Iranian television during the day and listens to language CDs as well. (Tr. 848). She does not sleep well mostly due to continued back pain. Plaintiff only indicates that her disc pain in her back and her hand problems limit her functionality and does not mention any other limiting health issues on the Function Report. (Tr. 97, 99). The ALJ found that as a result of past surgery for back pain and her continued issues with her hand from carpal tunnel, the plaintiff was restricted to performing sedentary activities versus performance of even light activities. There was a light activity recommendation from the Physical Residual Functional Capacity Assessment Report (PRFCA), but the ALJ gave that little weight.

In response to a hypothetical posed by the ALJ, the Vocational Expert (VE), Ms. Mallon, testified there were sedentary jobs available in the region that a person with plaintiff's medical conditions could perform, also considering the plaintiff's educational background and work history. (Tr. 850-51). There are no jobs if she could only work part time. (Tr. 851).

Plaintiff's medical records show she was hospitalized for back surgery to treat disc problems and that she has had surgery for her back and surgery for carpal tunnel syndrome. Medical records indicate she has received follow up care from doctors on both her back condition and her carpal tunnel condition. (Tr. 524-28). On July 1, 2011, such follow up care indicated she had a pain level of zero after hand surgery. (Tr. 528). On a subsequent follow up visit on July 13, 2011, plaintiff had a pain level of eight prior to treatment and a pain level of six after treatment. (Tr. 526). However, medical records also indicate she has not always regularly attended physical therapy sessions recommended as continued care of these conditions. [D.E. 10-1, p. 35-40].

The ALJ properly set forth all five steps in sequential order and analyzed plaintiff's case accordingly. (Tr. 14-15).

At step one, the ALJ determined plaintiff has never worked and therefore has not engaged in substantial gainful activity since May 30, 2012, when she filed for benefits. The plaintiff is not challenging the ALJ's determination regarding her work history.

At step two, the ALJ determined plaintiff does have severe impairments. Specifically, the ALJ determined that the plaintiff's back surgery constituted a severe impairment as well as the carpal tunnel syndrome. (Tr. 15). The ALJ based his determination on plaintiff's medical records showing that plaintiff underwent lumbar magnetic resonance imaging scans on March 19, 2010 and was found to have an L4-L5 protrusion. (Tr. 15). Additionally, the ALJ found that plaintiff was diagnosed with carpal tunnel syndrome in February of 2010, and had wrist pain and finger numbness as a result of this condition. (Tr. 15-16). The ALJ noted that in April of 2010, Michael Ryan, M.D. found plaintiff had some weakness as a result of carpal tunnel syndrome. (Tr. 16). The ALJ also reviewed the medical records from neurosurgeon Dr. Errington. (Tr. 16). The ALJ noted plaintiff's September 2012 lumbar surgery. After her back surgery, the ALJ did note that plaintiff reported dramatic improvement from pain and no continued numbness or tingling. (Tr. 16). The ALJ also reviewed the February 2013 medical records showing a computerized tomography scan (CT) of her lumbar spine which revealed no significant interval changes and a mild disc bulge. (Tr. 16). The plaintiff has made no claims challenging the ALJ's step two findings.

At step three, the ALJ determined that despite the plaintiff's two severe impairments, the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the impairments on the "Listing of Impairments." The ALJ reviewed plaintiff's spine

condition under Listing 1.04, relating to conditions of the spine. Additionally, the ALJ factored into his analysis the plaintiff's carpal tunnel syndrome and obesity. The plaintiff has not made claims that her conditions or combinations of her conditions meet the Listing of Impairments and plaintiff does not challenge the ALJ's step three findings.

At step four, the ALJ determined plaintiff had the residual functional capacity to perform sedentary work. The Function Report was reviewed by the ALJ. (Tr. 92-99). The ALJ determined plaintiff could lift and carry up to ten pounds, stand or walk up to two hours a day, and sit up to six hours a day. (Tr. 17).

Plaintiff challenges the RFC finding and testified she can only carry five pounds. (Tr. 847). Plaintiff made contradictory statements regarding her ability to walk for certain time periods (Tr. 92-99, 847). The ALJ found the plaintiff could perform tasks that involve frequent, but not constant, use of her hands. In his analysis, the ALJ weighed the statements of the plaintiff against the medical evidence in the record. The ALJ performed a two step analysis to determine the plaintiff's functional capacity. In the first step of the analysis, the ALJ determined if plaintiff could perform all or substantially all of the exertional demands of a job at a given level of exertion. The ALJ found that plaintiff could perform substantially all of the demands of a job that involves sedentary work. In the second step of the analysis to determine plaintiff's functional capacity, the ALJ determined the plaintiff's specific vocational profile based on her functional capacity, age, education, and work experience.

During his analysis of plaintiff's functional capacity, the ALJ considered the plaintiff's statements that she could not work due to back pain, and pain in her hands and left leg. The ALJ considered all statements plaintiff made during her testimony regarding her abilities to perform work

related tasks. (Tr. 17-18). The ALJ then examined the Function Report dated October 22, 2012. (Tr. 92-99). The ALJ determined that plaintiff's impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence and limiting and/or disabling effects of these symptoms not to be entirely credible. (Tr. 18). The ALJ gave more weight to the medical records than the plaintiff's statements regarding the effects of the symptoms on the plaintiff's functional capacity. The degree of the effects claimed by plaintiff were found not credible by the ALJ based on medical records. No medical evidence before the ALJ during the hearing or submitted while the record was still open indicated that plaintiff's leg or foot pain would limit plaintiff's functional capacity. During his assessment of the plaintiff's functional capacity, the ALJ noted that plaintiff was proscribed Hydrocodone and Lorazepan for pain and that the pain medication caused tiredness and dizziness for the plaintiff, but the ALJ found that the plaintiff could still perform sedentary tasks.

The ALJ relied upon the medical records from 2012 and 2013 post-surgeries for the plaintiff and the follow up on her back pain including X-rays and MRIs, which both showed no compression of the spine to indicate why continued pain might limit her functionality. (Tr. 18). The ALJ also found that the medical evidence showed plaintiff's carpal tunnel doctor expected continued improvement of her condition. (Tr. 18). The State Agency DDS physician was of the opinion, based on the medical records, that plaintiff could perform work at the light exertional level, but the ALJ found the light exertional level overstated the plaintiff's abilities with a history of past back surgery, so he gave the report little weight. (Tr. 18). The ALJ fairly weighed the plaintiff's assessment of her abilities against the medical evidence in the record and determined that plaintiff's functional capacity level allowed plaintiff to perform substantially all the requirements for sedentary work and the ALJ

proceeded to determine the plaintiff's specific vocational profile. The plaintiff challenges the ALJ's finding of her functional capacity at step four and his decision to proceed to step five. The plaintiff claims a total inability to work, even at the sedentary level, based on continued pain and limitations caused by her impairments and a combination of her impairments. Specifically, plaintiff now focuses on her heel pain as limiting her functional capacity.

At step five, the ALJ determined the plaintiff's past work experience, age, functional capacity, education level and job skills. (Tr. 18-19). After determining that plaintiff could peform sedentary work, a vocational expert's testimony was considered by the ALJ. The ALJ then found that jobs exist in the plaintiff's region that she is capable of performing. (Tr. 19). The ALJ made this determination based on the testimony of the vocational expert and the Dictionary of Occupational Titles. (Tr. 19). Plaintiff did not challenge the vocational expert's testimony.

The Appeals Council denied plaintiff's request for review of the ALJ's decision on February 24, 2015, leaving the ALJ's decision to stand as the Commissioner's final decision. (Tr. 5-7). The federal lawsuit, based on 42 U.S.C. § 405(g), followed.

II.
## ISSUE PRESENTED

By her complaint, plaintiff has merely alleged that the ALJ and Appeals Council improperly denied her benefits despite the medical evidence showing she was disabled. The only specific medical evidence she references in her original complaint is a letter from Patrick R. Crawford, D.P.M., her "heel doctor," who submitted a one sentence note stating that the plaintiff cannot work due to severe heel pain. This note is written on a prescription pad and is not accompanied by a further medical diagnosis regarding her "heel pain," nor is a medical reason for this "prescription"

stated by Dr. Crawford. This note is dated October 14, 2014, after the decision of the ALJ, but before the decision of the Appeals Council and was provided by the plaintiff to the Court. The Appeals Council considered all additional medical evidence in determining that plaintiff's claim should be denied. The Appeals Council noted that they considered all reports from August 24, 2014 to September 10, 2014 from the UMC Health System in making their decision. (Tr. 8). The October 14, 2014 note and/or prescription from Dr. Crawford, a doctor of podiatry, was issued after the record was closed by the ALJ and was not submitted to the Appeals Council by plaintiff.

On August 11, 2015 the Court issued a scheduling order giving the plaintiff thirty (30) days to specifically address all errors that the ALJ may have made in deciding her case. Plaintiff never responded to the scheduling order. The only issue ever raised by plaintiff in her original complaint and her responses to the questionnaire is the following:

1.     The ALJ improperly determined plaintiff was not entitled to benefits based on plaintiff's medical records, specifically her heel doctor's note that she cannot work.

III.
STANDARD OF REVIEW

A disability is defined as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). To determine whether a claimant is disabled, the Social Security Administration (SSA) has established a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920. First, the ALJ must determine whether the claimant is presently working at any substantial gainful activity, which is defined as work activity involving the use of significant physical or mental abilities for pay or profit, even if on a part-time basis. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or

combination of impairments that is severe and meets the duration requirements. 20 C.F.R. §§ 404.1520(c), 404.1509; *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). A severe impairment is defined as one which significantly limits an individual's mental or physical ability to meet the basic demands of work activity. 20 C.F.R. § 404.1520(c). Third, the ALJ must find disability if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, an assessment of residual functional capacity is made and if claimant can still perform relevant work and has a vocational profile, claimant is not disabled. 20 C.F.R. § 404.1520 (a)(4)(iv). Fifth, the impairment or combination of impairments must prevent the claimant from doing any work, when taking into consideration the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). In the first four steps, the burden of proof rests with the claimant to show that he or she is disabled. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). If claimant is able to satisfy his or her burden on steps one through four, the burden will shift to the Commissioner to show that other gainful employment exists that claimant is capable of performing despite the impairments. *Id.*

In reviewing disability determinations by the Commissioner, the Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Substantial evidence in the context of SSA determinations "is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's

subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

## IV.
## MERITS OF ALJ DECISION

The ALJ found plaintiff not disabled at step five of the five-step sequential analysis. The ALJ determined the plaintiff had the functional capacity to perform sedentary work at step four of the sequential analysis. These determinations were made based on credibility determinations of the plaintiff's statements regarding her limitations and the severity of her symptoms compared with the medical evidence in the record. (Tr. 18-19).

"The claimant has the burden of proving his [or her] disability and the ALJ has a duty to fully develop the facts, or else the decision is not supported by substantial evidence." *Leggett v. Chater*, 67 F.3d at 564 (citing *Pierre v. Sullivan*, 994 F.2d 799, 802 (5th Cir. 1989) (*per curiam*)). A finding

of impairment must be supported by medical signs and/or laboratory findings that show a medically determinable impairment is present. 20 C.F.R. § 404.1529(b). A claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [her] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). Thus, the ALJ cannot rely solely upon the claimant's complaints to support the existence of an impairment that would prevent the claimant from performing relevant work.

Implicit in plaintiff's submission is an argument that "new evidence" merits an award of benefits or a remand for further consideration. This appears so because plaintiff is arguing that her "heel doctor," Patrick R. Crawford, a podiatrist, determined in October of 2014 that plaintiff could not work as a result of heel pain. However, the only pain plaintiff identified in her Function Report was pain in her lower back and the nerves in her hands. (Tr. 92-99). At the ALJ hearing, plaintiff mentioned pain in her foot and possible future heel surgery. (Tr. 846-47). However, the plaintiff did not indicate that heel pain limited her functionality at the ALJ hearing, and in fact, plaintiff testified to the ability to walk for up to thirty minutes at a time, which was longer than she originally stated in her Function Report. (Tr. 846). She testified she was supposed to have surgery on her heel in June. (Tr. 846). Additionally, the ALJ provided the plaintiff with additional time to supplement the record and held the record open for the plaintiff to submit additional medical records after the hearing. (Tr. 852). The ALJ asked plaintiff if there was any other reason to hold the record open and she only mentioned her appointment with her doctor who performed surgery. Further, the plaintiff provided additional evidence to the ALJ and to the Appeals Council after she testified she was scheduled to see her heel doctor (in June) and she did not submit anything to the ALJ or the Appeals Council

regarding functional limitations based on her heel at that time. The Social Security Act provides for remand by the Court to allow further proceedings where new and material evidence exists, but only upon a showing of "good cause" for not presenting this evidence to the ALJ. 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589 (3rd Cir. 2001).

To warrant such a new evidence remand, the plaintiff must show: (1) the evidence is "new" and not merely cumulative; (2) the evidence is material and there is a reasonable probability that the new evidence would have changed the outcome of the Commissioner's determination; (3) the evidence *does not concern a later-acquired disability* or *subsequent deterioration* of the previously non-disabling condition; and (4) there is "good cause" for not including the new evidence in the administrative record. *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831 (3rd Cir. 2001). The Fifth Circuit has found that any evidence submitted by the plaintiff to the Appeals Council is part of the record and part of the "final decision" of the ALJ. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). The evidence submitted to the Appeals Council must still be part of the relevant time period from the start of the disability through the conclusion of the ALJ hearing.[1] Any evidence received by the Appeals Council relating to a time period after the conclusion of the ALJ hearing does not have to be considered and is not part of the record. 20 C.F.R. § 416.1476(b)(1).

Therefore, the evidence must relate to the contested time period. In this case, that period is from January 1, 2011 through May of 2012. Additionally, the Appeals Council specifically considered all evidence submitted through September of 2012, when the ALJ held the record "open" for further submissions and the Appeals Council considered that evidence. (Tr. 8). The new evidence

---

[1]In this case the ALJ held the record open after the hearing for plaintiff to submit additional medical records through September of 2012. The conclusion of the ALJ hearing occurred when the record was closed after receiving additional medical records.

cannot show a subsequently acquired disability or the deterioration of a condition that was not previously disabling. The October 14, 2014 note and/or prescription by podiatrist Dr. Crawford was issued after the record was closed by the ALJ and the Appeals Council was not presented with the evidence either. Plaintiff did not include "heel pain" or "foot pain" as part of the limitations discussed in her Function Report. (Tr. 92-99). At the ALJ hearing, plaintiff mentioned possible heel surgery set for the month following her hearing and the ALJ held the record open. The ALJ took into consideration her heel pain and leg pain in making his determination of her functional capacity. (Tr. 18-19). The record clearly indicates that plaintiff stated her limitations were based only on her back pain and hand pain. (Tr. 85, 87, 89, 99). At the ALJ hearing the first mention of heel pain occurred, and plaintiff did not indicate how this heel pain would further restrict her functional capabilities. (Tr. 846). Although it does not appear to be the case, if the heel pain relates to one of her impairments, any further deterioration of those impairments into pain in her heel has not been shown to be so severe that plaintiff cannot perform sedentary tasks and is such not a proper reason for remand.

Nothing in the record indicates plaintiff's new evidence relates to the time period under consideration. Because the new evidence has not been shown to be related to the time period under consideration, it cannot provide a basis for a new evidence remand. Additionally, nothing in the new evidence provided was shown to contradict the ALJ's determination regarding disability. The note and/or prescription written by the podiatrist does not give a specific basis for disability or list a specific amount of time the plaintiff must remain off her feet, nor does the note suggest any limitations on plaintiff's ability to perform sedentary tasks. Even if plaintiff were to now contend she suffered from severely disabling heel pain during the time period under consideration (despite her testimony of her continued ability to walk for up to thirty minutes at the hearing), she has not

shown "good cause" for failing to timely assert the impairment earlier and provide proof of how the condition would limit her functional capabilities. Even now, the record plaintiff provided does not indicate how the heel pain limits her functional capabilities and prevents sedentary work.

Other than her new evidence argument and her sufficiency of the evidence argument, plaintiff does not identify any error by the ALJ. As previously stated, the ALJ properly laid out the standards in the five step analysis and weighed the evidence to determine if plaintiff's claims were credible when viewed against the medical records. The undersigned has made a review of the medical records, as this plaintiff is *pro se*, and has not determined the ALJ made any improper speculation regarding the plaintiff's conditions. The ALJ based his determinations of plaintiff's conditions on actual medical evidence in the record and plaintiff has failed to articulate any specific evidence ignored by the ALJ that should have resulted in a different finding.

Examination of the record shows the ALJ's determination is amply supported by the evidence of record. The ALJ discussed, weighed, and analyzed the medical reports. The limitations determined by the ALJ tracked those assessed by the consulting medical professionals and the ALJ's assessment of plaintiff's daily activities track that presented in plaintiff's testimony, except to the extent that the ALJ determined from the medical records that she was able to lift ten rather than five pounds and could walk for *up to* two hours a day. The ALJ based these differences on the follow up care reports of her back surgeon who found no medical reasons why she could not perform such tasks following surgery and from contradictions in plaintiff's own statements regarding her ability to walk for certain periods. Additionally, the cumulative walking time is consistent with plaintiff's testimony and statement regarding walking with periods of rest in between the bouts of walking. Plaintiff has not pointed to any evidence of record for the relevant time period which contradicts the ALJ's

determination nor has she shown any error in the ALJ's reasoning. Lastly, and as mentioned previously, as to plaintiff's new evidence of other impairments, *i.e.*, heel pain, she has failed to show this impairment or deterioration of this impairment related to the relevant time period.

V.
RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff EIMAN KHAMISSI was not disabled and not entitled to supplemental security income under section 1614(a)(3)(A) of the Social Security Act be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___/s+___ day of September 2016.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).